**RECORD NO. 12-7054**

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The
# United States Court of Appeals
For The District of Columbia Circuit

# IN THE MATTER OF: HOPE 7 MONROE STREET LIMITED PARTNERSHIP,

---

# HOPE 7 MONROE STREET LIMITED PARTNERSHIP,

*Appellant*,

v.

# RIASO, LLC,

*Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**REPLY BRIEF OF APPELLANT**

Donald M. Temple
**TEMPLE LAW GROUP**
1101 15th Street, NW, Suite 910
Washington, DC  10005
(202) 628-1101

*Counsel for Appellant*

**THE LEX GROUP**<sup>DC</sup> ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C.  20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

I.   STATUTES AND REGULATIONS ............................................................1

II.  SUMMARY OF ARGUMENT.....................................................................1

III. ARGUMENT..................................................................................................2

    A.   Appellant Diligently Discovered Appellee's Alleged Fraud ................3

    B.   Hope 7 Has Demonstrated Extraordinary Circumstances.....................8

IV.  CONCLUSION.............................................................................................10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Hope 7 Monroe St. Ltd. v. Raiso L.L.C.*,
    473 B.R. 1 (Bankr. D.D.C. 2012) ......................................................... 2, 4-5

*\*Salazar v. District of Columbia*,
    633 F.2d 1110 (D.D.C. 2011) ....................................................................... 10

**RULES**

Fed. R. Civ. P. 60(b) ........................................................................................ 1, 10

Fed. R. Civ. P. 60(b)(2) .......................................................................................... 1

Fed. R. Civ. P. 60(b)(2)(3) ..................................................................................... 2

Fed. R. Civ. P. 60(b)(6) .................................................................................... 2, 10

*\*Chief Authorities are Designated by an Asterisk*

# HOPE 7 MONROE STREET LIMITED PARTNERSHIP
# REPLY TO APPELLEE'S BRIEF

Come Now Appellant, Hope 7 Monroe Street Limited Partnership ("Hope 7"), and briefly replies to Appellee's brief.

## I. STATUTES AND REGULATIONS

All applicable statutes and regulations are set forth in the Appellant's Opening Brief.

## II. SUMMARY OF ARGUMENT

The Appellee has filed an appellate brief in which it submits that the lower courts were correct in their rulings under FRCP Rule 60(b)(2) primarily because Mussie Leakemariam ("Leakemariam") is questionable broker-lender dealings could have been discovered sooner and raised in a more timely fashion. Appellee, citing the lower Bankruptcy court, asserts that Appellant had ten (10) months prior to the bankruptcy approval hearing in which to depose Mr. Leakemariam. *Id.* at 9.

Appellant seeks to clarify the record in terms of the lower court's view and Appellee's contentions, which goes to the fundamental issue of the lower court's erroneous rulings on the FRCP Rule 60(b) motion. At the outset, it is critical to

note that Appellant filed its motion for reconsideration under Rule 60(b)(2)(3) and (6).[1]

Appellee seeks to denigrate Appellant and to confuse the time sequences herein as well as the interplay of legal relationships during the period November 2009 through October 2010. Moreover, the court should keep in mind that Mr. Cappel is a separate and distinct party than Hope 7. The courts below seemingly treat them as the same for purpose of discovery in the civil case. That they conclude that Cappel's actions and possible discovery deficiencies equal that of Appellant Hope 7.

## III.  ARGUMENT

First and foremost, the lower court and the Appellee's following statement at page 2 of its Brief is inaccurate: "During all times relevant to these proceedings, Monroe and Cappel were nevertheless represented by the same attorneys." *See Hope 7 Monroe St. Ltd. v. Raiso L.L.C.*, 473 B.R. 1 (Bankr. D.D.C. 2012). Mr. Nigel Scott initially represented Hope 7 when the complaint was filed in November 2009. Mr. Boddie answered the complaint in his individual capacity in January 2010. In early January, Nigel Scott filed a motion in the D.C. Superior Court styled "Motion for Enlargement of Time to File Responses to Discovery."

---

[1] Appellant carefully addressed and distinguished its relative arguments for each of these theories in its pleadings below, and in particular its Reply Brief before the District Court Judge. [Docket No 10]

2

Therein, Scott noted a potential conflict of interest given that he might be a potential witness in the lawsuit. Mr. Temple noticed his appearance in the Cappel's Superior case on February 11, 2010, five (5) days prior to the Bankruptcy court's February 16, 2010 hearing on Creditor's motion to sell free and clear. Mr. Temple did not represent Hope 7 in the bankruptcy proceeding on February 16, 2010. Further, Mr. Temple filed an amended complaint in the D.C. Superior Court on March 2, 2010, which effectively removed Hope 7 as a party plaintiff Cappel commenced paper discovery in that case on or around March 15, 2010, well after the February 16, 2010 hearing. A hearing was held on May 25, 2010 on Debtor's Objection to RIASO's proof of claim. An approval hearing was held on June 30, 2010, which preceded Leakemariam's August 9, 2010 discovery responses and his September 2010 deposition.

### A.    Appellant Diligently Discovered Appellee's Alleged Fraud.

Notably, as of January 2010, Mr. Boddie admitted in his answer that he was Counsel for RIASO and had prepared all of the loan documents, and further that Mr. Leakemariam was not a licensee broker. *See* Boddie Answer at paragraph 11, SJA. Discovery commenced in that case and approximately six (6) months after the amended complaint was filed, Appellant deposed Mr. Leakemariam. As of the Bankruptcy court's June 30, 2010 hearing, the Cappel discovery was in process, and limited information had been obtained. While the issues surrounding

3

Leakemariam's involvement with the transaction were suspicious enough to raise a cloud over the transaction and to command the attention of both the Trustee and the Bankruptcy Judge, there was no corroborative evidence in the record. Nor had Plaintiff Cappel discovered such evidence in the Superior Court case. There remained nevertheless, as demonstrated by Appellee, significant due diligence questions related to the validity and legality of the transaction. As of June 2010, there was no clear evidence as to the source of the $1.6 million, nor any known agreements between the lender and third part money sources. Despite substantive ignorance about the details of the underlying financial transaction and therefore any possible legal claims related thereto, the Bankruptcy Trustee between May and June 2010 determined that the sale of the Debtor's property and his existing claim nevertheless for fraud against the RIASO should commence as "sound business judgment." However suspicious the evidentiary developments through May and June 2010, Plaintiff Cappel, did not at that time enjoy an opportunity to confirm its suspicions and bolster the record through discovery at that time, particularly given the clear and convincing burden of proof necessitated by its fraud allegations.

Against this backdrop, the Bankruptcy court found that "the Debtor had approximately ten (10) months prior to its June 2010 approval hearing to depose Defendant Leakemariam, or to make other efforts to discover the information that Hope 7 now claims constitutes new evidence. *Hope 7 Monroe St. Ltd. v. Raiso*

4

*L.L.C.*, 473 B.R. 1, 10 (Bankr. D.D.C. 2012). The court, however, determined that based on Debtor's August 2009 suspicions it should have been able to investigate and collect hard evidence about Leakermariam's connection to RIASO, and its alleged fraud. The court now knows that absent a paper trail related to the transfer of monies from unknown sources to RIASO and Hope 7 would not have been able to discover whether RIASO actually had a bank account or whether it had sourced monies from third parties. Two months after August 2009, the Debtor and the guarantor filed a civil action in the District of Columbia Superior Court, which both Boddie and Leakemariam answered on December 1, 2009. Thereafter, the Debtor's then attorney, Nigel Scott ("Scott") recognized a conflict of interest as per his continued representation of Plaintiffs. In February 2010, Scott filed a motion for enlargement of time. The undersigned entered an appearance on February 11, 2010, and filed an amended complaint on March 2, 2010 resulting in a change of counsel and Hope 7's removal as a party plaintiff. Discovery commenced immediately on March 15, 2010, three (3) months prior to the approval hearing. Hope 7 underscores, as well, an ongoing negotiation with the Trustee to abandon its claims, which would allow it to independently pursue them in the D.C. Superior Court. *See* Appellant's April 29th, 2013 Brief at 35. Said negotiations with the Trustee began in January 2010. *Id*.

5

In short, Hope 7 could not have conducted discovery in the D.C. Superior court case after March 2010 because it was not a party thereto. Further, its prior attorney, Scott appropriately recognized a professional conflict of interest, which precluded advancing discovery prior to new counsel entering an appearance in February 2011. Moreover, as a matter of law, the Bankruptcy Trustee, not the Debtor, controlled Hope 7's claim, which is why Hope 7's Counsel negotiated with the Trustee to abandon its claim against RIASO and to allow Hope 7 to rejoin the then pending D.C. Superior court litigation.

In its brief at page 9, Appellee references the Bankruptcy court's ruling on "lack of due diligence." noting the court's comment: ".... even assuming this court were to consider and accept Appellant's position that it was hamstrung from pursuing discovery in the Superior Court cases, *there was nothing to prevent it from investigating the circumstances surrounding the real-estate loaner details about RIASO by other means. Citing* JA 712. (Emphasis added). The Bankruptcy court and Appellee, however, fail to explain how either Cappel or Hope 7 could have reasonably and successfully investigated RIASO and Leakemariam's fraud related to the initial $1.6 million loan, Leakermariam's undisclosed role as an unlicensed broker and lender, and other related details which Leakemariam concealed while represented by counsel. This is an enormous burden absent access to loan transaction documents between the lender and third party sources especially

6

given that monies were moving to and from entities through an attorney's escrow account via wire transfer. This also occurred during a period when RIASO was aggressively seeking repayment from Hope 7 for the mortgage loan and Leakemariam was purporting assisting Hope 7 in the obtaining of a promised bridge loan.

In reality, there was no practical independent investigatory option available to Hope 7 in to which to meaningfully investigate the fiscal transaction or to adduce the underlying undisclosed financial relationships and money flow prior to filing the Superior court case. Moreover, as a matter of law, after the civil action was filed Hope 7 technically did not have control over its claim nor the authority to advance discovery.

In its Brief at page 12 Appellee cites the Bankruptcy court opinion, argues that the new evidence does not push the settlement "below the lowest point in the range of reasonableness." The court further opined that it is unclear how the new evidence strengthens Debtor's objection to RIASO's proof of claim. *See* Riaso Opposition Brief at 12. RIASO's argument fails to address the legal significance of a sham corporation potentially exploiting the court to advance an apparent fraudulent real estate loan transaction, nor does RIASO reconcile the possible money laundering eventualities that exist when $1.6 million is transferred through a lawyer's escrow account, the lender does not have a bank account, the source of

7

those monies is and remains untracked and unidentified, and $2.9 million is paid by a Trustee through a lawyer's escrow account to undisclosed recipients.

The Bankruptcy court should have minimally reopened the record and taken appropriate steps to resolve the missing pieces of a complex puzzle, which appears to show deceit by Leakemariam and fraud on the Debtor. If Creditor/Lender did not have a bank account, what was the source of the $1.6 million dollars? If the $1.6 million dollars were sourced from one or more third parties, why is there no written documentation? Moreover, do the two transactions at issue ($1.6 million and $2.9 million dollars) comply with applicable federal laws governing the movement of monies outside of the banking system?

Lastly In order to ensure that the court and the bankruptcy process was not being used to perpetrate or to advance a fraud the Bankruptcy court and the Trustee should know the extent to which there was compliance with the Bankruptcy court's order that RIASO receive the proceeds from the sale of the Debtor's property. The lower court misplaces the burden on Hope 7. As per due diligence, rather, that authority and opportunity rested more with the Bankruptcy Trustee than the debtor, who had no real power.

### B.    Hope 7 Has Demonstrated Extraordinary Circumstances.

As demonstrated herein and in Appellant's brief, Hope 7 acted diligently in its pursuit of evidence of RIASO and Leakemariam's fraudulent behaviors. In

8

bringing this new evidence to this court's attention. Further, Hope 7 has demonstrated extraordinary circumstances. RIASO, as does the court below, suggests that Hope 7 should have been able to uncover *sua sponte* evidence of Leakemariam and RISAO's fraud in either a pre-law suit investigatory or in a pre-discovery manner, absent the tools of discovery.

Hope 7's assertion of fraud and exposing a potential sham corporate status on the part of RIASO is, we submit, a fact that is central to the litigation which affects RIASO's proof of claim filed in the Hope & Bankruptcy. It also affects RIASO's standing, as well as the substantive merit of its proof of claim. If RIASO did not actually lend the funds at issue, then absent any corroborating evidence, it follows that the real creditors should have filed separate and distinct proofs of claim. This did not happen. The record confirms that there are independent sources, which provided monies to RIASO for purposes of lending funds to Hope 7. Yet, neither the Bankruptcy nor District courts know their identities. The courts do know that there are no agreements between RIASO and these independent money sources on whose behalf RIASO has acted and received $2.9 million from the Bankruptcy Trustee.

There is a potential fraud in this case and absent proper scrutiny of facts, which Hope 7 timely brought to the court's attention, the court may have been used as an instrument of that fraud given the international climate as per terrorism and

9

heightened scrutiny as per money laundering. This transaction is suspect on its face. Moreover, the lower courts and RIASO would place an insurmountable burden on Hope 7 or any other similarly situated victim of real estate fraud to discover the complex tools of document sensitive real estate transactions. This record, we submit, demonstrates the stuff of "extraordinary circumstances" necessary to justify a favorable Rule 60(b)(6) consideration. *Salazar v. District of Columbia*, 633 F.2d 1110 (D.D.C. 2011).

**IV.    CONCLUSION**

Appellee has failed to rebut Hope 7 arguments as per its Rule 60(b) claim in their entirety. Hope 7 did all in its power while in bankruptcy to protect its interests and acted diligently and reasonably to seek reconsideration from the court below. Accordingly, this case should be reversed.

Respectfully submitted,

/s/ Donald M. Temple
Donald M. Temple [#408749]
1101 15th Street, NW, Suite 910
Washington, DC  20005
(202) 628-1101 Telephone
(202) 628-1149 Facsimile
dtemplelaw@gmail.com
Attorney for Appellant Hope 7

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*2,237*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: June 26, 2013                          /s/ Donald M. Temple
                                              *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 26th day of June, 2013, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

| | |
|---|---|
| John C. Decker, II<br>ATTORNEY AT LAW<br>5207 Dalby Lane<br>Burke, Virginia  22015<br>(703) 503-0254<br><br>*Counsel for Appellee* | Richard F. Boddie<br>SLOCUM & BODDIE, P.C.<br>5400 Shawnee Road, Suite 300<br>Alexandria, Virginia  22312<br>(703) 451-9001<br><br>*Counsel for Appellee* |

I also certify that the required number of bound copies of this Reply Brief of Appellant were hand filed with the Clerk of this Court.

/s/ Donald M. Temple
*Counsel for Appellant*